J-S16024-18 & J-S16025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.S.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1662 MDA 2017 |

Appeal from the Order Entered September 27, 2017
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s): CP-21-DP-0000062-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: H.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.S.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1669 MDA 2017 |

Appeal from the Decree Entered September 27, 2017
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 96-2017

BEFORE:   BOWES, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY MURRAY:                                          **FILED APRIL 06, 2018**

In these consolidated appeals, M.S. (Father) appeals from the decree

entered September 28, 2017, which involuntarily terminated his parental

rights to his minor son, H.P. (Child), born in December of 2014.  Father also

appeals from the order entered the same day, which changed Child's

_____

*   Retired Senior Judge assigned to the Superior Court.

permanency goal to adoption.[1]  Additionally, Father's counsel filed a petition to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  After careful review, we grant counsel's petition to withdraw and affirm.

The orphans' court summarized the relevant factual history of this case as follows.

> [Father] is the biological father of [Child]. . . .  [Child] was adjudicated dependent on April 25, 2016 and placed in the kinship home of his paternal great-grandparents [(Paternal Great-Grandparents)].  [Child] had been living with his great-grandparents for approximately three weeks at the time he was adjudicated dependent, due to [Father's] violation of probation and subsequent incarceration for heroin use.  Neither [A.P. (Mother)] nor any family members on Mother's side were an appropriate resource for [Child].  [Child] has remained in placement over the life of his dependency, which at the time of the termination hearing had been over seventeen months. [Child,] at no time[,] has been returned to the care of his parents.
>
> In July 2016, a permanency plan and family service plan were put in place with the goal of family reunification.  At that time, it was agreed that [Father] would have 1-3 visits per week with the [C]hild, said visits to occur in the [Paternal Great-Grandparents'] home and under their supervision; in the intervening seventeen months until the present, the nature and frequency of those visits have not changed.  [Father] participated in the George Junior Republic parent-child visitation program while he was incarcerated, and completed several men's parenting classes once he was out of prison.  However, [Father] did not successfully complete the program and has not attended any parenting classes since May 23, 2016.  In August 2016, [Father] completed a FAST

_____

[1] On September 28, 2017, the orphans' court also terminated the parental rights of A.P. (Mother); Mother did not appeal that determination, nor is she a party to this appeal.

assessment, and it was recommended that he participate in TIPS parenting education. [Father] did not participate in TIPS.

[Father] has a long history of drug abuse. [Father] was most recently incarcerated for heroin use on April 5, 2016. [Father] has had numerous relapses over the period of [Child's] dependency, and most recently overdosed on heroin in April 2017. [Father] has been involved in several rehabilitation programs, both inpatient and outpatient, but has not been able to maintain sobriety outside of rehab or after he is released from incarceration. [Father] overdosed on heroin and was hospitalized on or around July 27, 2016, approximately three weeks after being released from incarceration. [Father] was discharged from the Roxbury treatment program and the Discovery House program due to missing classes on September 9, 2016. In mid-October 2016, [Father] was fired from his job, missed a probation appointment, failed to show for a scheduled mental health evaluation at Stevens Center, and left his grandparents' home with a friend and later refused to tell them where he was living. In late October 2016, [Father] entered rehab at Clearbrook and moved into a halfway house in Simpson, PA; [Father] was discharged from the halfway house in November 2016 for relapsing. In February 2017, [Father] entered inpatient treatment at Keep it Green treatment program, but was discharged on February 15, 2017 for abusing heroin. On February 27, 2017, [Father] entered rehab at Pyramid Health Care, but overdosed on heroin and was hospitalized in mid-April 2017. [Father] went into inpatient therapy at Safe Haven on April 27, 2017 after being discharged from the hospital. [Father] has been unsuccessful in each of his attempts to complete the programs and stay sober.

Orphans' Court Opinion, 12/11/17, at 2-4 (footnotes omitted).

On March 22, 2017, Cumberland County Children and Youth Services (CYS) filed a petition to change Child's permanency goal from reunification to adoption. Thereafter, on August 17, 2017, CYS filed a petition to terminate Father's parental rights to Child. The orphans' court conducted a hearing on

both petitions on September 27, 2017.[2]  At the conclusion of the hearing, the orphans' court orally delivered its decree terminating Father's parental rights to Child and changing Child's permanency goal to adoption.  The orphans' court entered its decree on September 28, 2017.  Father timely filed notices of appeal on October 27, 2017, along with concise statements of errors complained of on appeal.  On January 31, 2018, Father's counsel filed a petition to withdraw and *Anders* brief in this Court.

Before reaching the merits of Father's appeal, we must address counsel's petition to withdraw.  *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)).  This Court extended the *Anders* procedure to appeals from decrees involuntarily terminating parental rights in *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992).  To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

---

[2] At the hearing, Child was represented by Marylou Matas, Esquire, who served as both Guardian *ad litem* and legal counsel.  *See* Petition for Appointment of Counsel, 8/11/17.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an *Anders* brief must comply with the following requirements:

> (1)  provide a summary of the procedural history and facts, with citations to the record;
>
> (2)  refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3)  set forth counsel's conclusion that the appeal is frivolous; and
>
> (4)  state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, Father's counsel filed a petition to withdraw, certifying that he reviewed the record and determined that Father's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Father, and counsel's assessment of why those issues are frivolous, with citations to

relevant legal authority. Counsel provided Father with a copy of the brief and a letter advising him that he may obtain new counsel or raise additional issues *pro se*. Accordingly, counsel complied substantially with the requirements of **Anders** and **Santiago**. Therefore, we may proceed to review the issues outlined in the **Anders** brief. We must also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's **Anders** brief raises the following issues for our review.

1. Did the [orphans'] court abuse its discretion and commit an error of law when it found that the child's permanent placement goal of reunification was neither appropriate, nor feasible and ordered a goal change to adoption, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S.A. § 6351(f)?

2. Did the [orphans'] court abuse its discretion and commit an error of law when it found that sufficient grounds existed for a termination of [Father's] parental rights to his child, thus contravening section 2511(a) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)?

**Anders** Brief at 4 (suggested answers omitted).

We first address Father's claim that the orphans' court erred by terminating his parental rights.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The orphans' court terminated Father's parental rights pursuant to Section 2511(a)(2), (5), (8) and (b). This Court need only agree with the orphans' court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Accordingly, we focus our analysis on Section 2511(a)(2) and (b), which provides as follows.

- 7 -

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2) and (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence that the following three conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003); 23 Pa.C.S.A. § 2511(a)(2). The

grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Parents have an "affirmative duty" to work toward the return of their children. *See In re Julissa O.*, 746 A.2d 1137, 1141 (Pa. Super. 2000) (citations omitted). "This 'affirmative duty,' at minimum, requires a showing by the parent of a willingness to cooperate . . . to obtain the rehabilitative services necessary for the performance of parental duties and responsibilities." *Id.* (citation omitted).

In granting CYS's petition for involuntary termination, the orphans' court made the following determination:

> [Father's] abuse of heroin was a principal cause of the removal of [Child]. After [Child's] removal, [Father] agreed to a service plan that required him to stop using drugs and seek treatment. The record shows [Father] continued to use drugs. In the seventeen months between April 2016 and September 2017, [Father] relapsed several times. These relapses occurred while [Father] was in treatment and/or counseling meant to help treat his substance abuse problems and while he was in frequent contact with [CYS] and the Child. [Father] testified that he understands that he has an addiction, that he cannot guarantee that he will stay sober long-term, and that he has to "take things one day at a time." However, this [c]ourt notes that the purpose of the family service plan [CYS] and [Father] have agreed to is to reunify the Father with the [C]hild and transition back to full-time care, and Father's lack of progress on the goals within the service plan make this transition impossible. This [c]ourt also notes that [Father] repeatedly relapsed while participating substantially in the services available to him. Relapses under such circumstances

certainly weighs against [Father's] avowals of his current sobriety, and negates [Father's] pleas to this [c]ourt to "get more clean time under his belt" in order to have the opportunity to parent the [C]hild. This [c]ourt also notes that [Child] was originally removed from [Father's] care due to his substance abuse and the fact that [Father] has had numerous inpatient stays in rehab, relapses, and overdoses over the last seventeen months reflects [Father's] struggle with addiction.

Viewing the record as a whole, this [c]ourt agrees with [CYS's] assessment that [Father] has not proven himself capable, thus far, of maintaining long-term sobriety. Furthermore, [Father's] relapses are of a quality that ensures he is not able to provide appropriate parental supervision for his son. While [Father] testified to his commitment to being in his son's life, his desire to care for the child on his own, and his other efforts to commit himself to sobriety, the fact remains that [Father] has a demonstrated history of relapse, which is dangerous to any child in [Father's] primary care. While [CYS], the guardian *ad litem*, and indeed, even [Child's] current caregivers have provided [Father] with multiple chances to get sober and prove himself capable of providing safe and stable parental supervision for the child, he has not achieved that goal. This [c]ourt found [CYS] has shown [Father] is not able to provide essential parental care and control, that the conditions that existed at the time of removal continue to persist, and that [Father's] addiction, which causes such harm to [Father] and potentially the [C]hild, will not be remedied within a reasonable period of time.

Orphans' Court Opinion, 12/11/17, at 11-12.

Father argues that he has complied with the objectives put in place by CYS. ***Anders*** Brief at 13. Namely, Father asserts that, in the six months preceding the termination hearing, he has maintained sobriety. ***Id.*** Father contends that the orphans' court erred by "disregarding [his] pleas for additional time to achieve his objectives" before terminating his parental rights. ***Id.*** at 11.

After a careful review of the record, we find there is ample, competent evidence to support the orphans' court's factual findings, and that the court's conclusions are not a result of an error of law or an abuse of discretion. The certified record reveals that CYS established the following objectives for Father: meet Child's developmental needs, improve parenting skills, meet Child's medical needs, maintain contact with Child, refrain from using drugs and alcohol, obtain adequate and safe housing, address mental health concerns, and cooperate with CYS. Orphans' Court Opinion, 12/11/17, at 4-5; Petition to Terminate Father's Parental Rights, 8/17/17.

Child was initially placed in Paternal Great-Grandparents' care in April 2016, when Father was incarcerated for violating his probation after he tested positive for heroin. N.T., 9/27/17, at 6. Father testified that since April 2016, he has relapsed or overdosed "four or five times," gone through inpatient treatment "three or four" times and resided in recovery houses "four or five [times] – give or take." *Id.* at 77. Although Father testified that he has been sober for five months, the fact of the matter is that Father has been unable to maintain sobriety for any appreciable amount of time. *Id.* at 61, 67.

The record also reveals that visits between Father and Child have been inconsistent. Father testified that he sees Child approximately once every other week, with the most recent visit lasting "[p]robably 10 or 15 minutes." N.T., 9/27/17, at 71. Likewise, Paternal Great-Grandmother testified that she has tried to encourage Father to spend additional time with Child, such as on

- 11 -

Christmas and New Year's, but Father declined the extra time with Child, preferring to spend the time with his current girlfriend. *Id.* at 18. Further, Paternal Great-Grandmother testified that Father does not attend Child's medical appointments or attend to his daily needs. *Id.* at 11-12.

Moreover, contrary to Father's claims, Father has been unable to secure stable housing or employment. Since April 2016, Father has either resided with Paternal Great-Grandparents, been incarcerated, or lived at a rehabilitation facility or halfway house. Although Father recently moved into an apartment owned by his boss, he resides with a roommate who is also on probation and recovering from a heroin addiction. N.T., 9/27/17, at 69. Father also testified that he does not have a lease for the apartment because he and his boss "trust" each other. *Id.* at 60. Most importantly, Father testified that he lacks basic supplies for Child, such as a crib or bedding. *Id.* at 75. Moreover, Father has been employed at his current job for only three months, and was terminated from his prior employment after he overdosed in the employees' bathroom. *Id.* at 75-76.

Thus, the record confirms that Father is incapable of parenting Child, and that he cannot, or will not, remedy his parental capacity. Father failed to comply with his permanency plan goals, and he is in no position to provide the permanence and stability that Child requires. Father's drug addiction, and the danger that it may pose to Child, is particularly troubling. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts

to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claim of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

***In re Adoption of C.D.R.***, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Instantly, Father's counsel does not challenge the termination of his parental rights pursuant to Section 2511(b) in the argument section of his

brief, nor did he include such claim in his concise statement or statement of questions involved. Thus, we conclude that Father waived any challenge as to Section 2511(b). *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (concluding that appellant waived her challenge in regard to Section 2511(b) by failing to include it in her concise statement and statement of questions involved).

Even if Father had preserved such a challenge, we would likewise conclude that Father would not be entitled to relief. *See Flowers*, 113 A.3d at 1250 (holding that we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel"). Here, the orphans' court concluded that it was in Child's best interest to terminate Father's parental rights and allow Paternal Great-Grandparents to adopt him. The court found that although Father wishes to maintain sobriety, he has been unable to do so. Child has resided with Paternal Great-Grandparents for over 18 months, the majority of his life, and looks to them for love and security. The record supports the finding that Child's primary bond is with Paternal Great-Grandparents, rather than Father, and Paternal Great-Grandparents desire to adopt Child and provide him with the stability and permanency he needs.

Although Father's love for Child is not in question, along with his desire for the opportunity to parent Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply

cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d at 732. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856. In sum, because the orphans' court's findings are supported by the record and free of legal error, we affirm the orphans' court's determination that termination of Father's parental rights was in Child's best interest. *See T.S.M.*, 71 A.3d at 267.

Finally, we consider whether the orphans' court abused its discretion when it changed Child's permanency goal from reunification to adoption. Our standard of review is well-settled:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

> Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6)

- 15 -

the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

For the reasons discussed above, we conclude that the orphans' court did not abuse its discretion. Father remains incapable of parenting Child, and poses a risk to Child's safety. Child is bonded with Paternal Great-Grandparents, who are a pre-adoptive resource. It is clear that Child's best interest is served by changing his permanency goal from return to parent or guardian to adoption.

Accordingly, our independent review of Father's claims demonstrates that they do not warrant relief. Moreover, our review of the record does not reveal any non-frivolous claims overlooked by counsel. *See Flowers*, 113 A.3d at 1250. We therefore grant counsel's petition to withdraw, and affirm the September 28, 2017 decree and order.

Petition to withdraw granted. Decree affirmed. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/6/2018

- 16 -